UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JANE DOE : | |
|     *Plaintiff*, : | |
| : | |
| v. : | C.A. No. 1:22-cv-00441 |
| : | |
| TOWN OF SOUTH KINGSTOWN by and through : | |
| Its Treasurer/Finance Director ZACHARY SAUL, : | |
| ROBERT C. ZARNETSKE and his successors : | |
| solely in their capacity as Town Manager of the : | |
| Town of South Kingstown; AIMEE REINER and : | |
| Her successors solely in their capacity as : | |
| Director of Administrative Services of the Town : | |
| of South Kingstown, and : | |
| JOHN DOE DEFENDANTS 1-5 : | |
|     *Defendants*. : | |

**PLAINTIFF JANE DOE'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF HER OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, Jane Doe (hereinafter referred to as the "Plaintiff"), and, pursuant to LR Cv 56(a)(4), in support of her opposition to the Defendants' Motion for Summary Judgment, the Plaintiff contends that the following facts are undisputed and preclude summary judgment for the Defendants.

1. The South Kingstown Police Department (hereinafter the "SKPD") is a municipal agency under the direct supervision and control of the defendant Town. *See Exhibit A - First Amended Complaint ¶ 8.*

2. The Plaintiff worked the overnight shift five (5) days per week. *Exhibit A - First Amended Complaint ¶ 12.*

3. Shortly after the Plaintiff began her position as a full-time dispatcher with the SKPD, she was repeatedly sexually harassed. *Exhibit A - First Amended Complaint ¶ 13.*

1

4. In or around February of 2019, Lieutenant Scott Orton ("Lt. Orton"), who was at all relevant times a superior officer and the shift supervisor for the overnight shift, began making sexual and inappropriate advances towards the Plaintiff. *Exhibit A - First Amended Complaint ¶ 15.*

5. Lt. Orton, upon information and belief, was in his 50's at the time that he sexually harassed the Plaintiff, who was in her early 20's. *Exhibit A - First Amended Complaint ¶ 16.*

6. Lt. Orton commented on the Plaintiff's physical appearance, engaged in unwanted and inappropriate sexual touching of the Plaintiff, made unwanted and inappropriate sexual gestures towards the Plaintiff, and took photographs of the Plaintiff without her knowledge. *Exhibit A - First Amended Complaint ¶ 17; See Exhibit B - SK Incident Report 19-5-IA Narrative of Capt. Ewing-Chow, p. 13.*

7. The Plaintiff has recounted specific instances of Lt. Orton's inappropriate and harassing conduct in the workplace, which includes him putting his head on her shoulder, breathing down her neck, and whispering into her ear that, "she was lucky she was so pretty." *Exhibit B - SK Incident Report 19-5-IA Narrative of Capt. Ewing-Chow, p. 13.*

8. The Plaintiff originally did not report Lt. Orton's conduct out of fear of retaliation. *Exhibit B - SK Incident Report 19-5-IA Narrative of Capt. Ewing-Chow, p. 5.*

9. Lt. Orton's conduct was viewed by multiple members of the SKPD, including Plaintiff's superior officer, Sergeant Michael Bronson. *Exhibit B - SK Incident Report 19-5-IA Narrative of Capt. Ewing-Chow, p. 7.*

10. Lt. Orton's sexually harassing behavior eventually became so extreme that Sergeant Bronson felt compelled to intervene on the Plaintiff's behalf and reported Lt. Orton's

conduct to his supervisors. *Exhibit C - SKPD Incident Report 19-3-IA Narrative Lt. Houghton, pp. 2-3.*

11. The Plaintiff told Aimee Reiner about Lt. Orton's conduct in a meeting on December 16, 2019, which was also attended by Aimee Cambell and Officer David Marler. *Exhibit B - SK Incident Report 19-5-IA Narrative of Capt. Ewing-Chow, p. 1.*

12. Lt. Orton's behavior became increasingly more inappropriate and that after several times of objecting to and refusing his advances, the Plaintiff noticed a definitive change in Lt. Orton's behavior and he began to yell directly at her or yell about her to others, he would get extremely angry with her without cause, and he would yell at her criticizing her job performance and threatening to get her fired. *Exhibit B - SK Incident Report 19-5-IA Narrative of Capt. Ewing-Chow, p. 3.*

13. The Plaintiff is certain that this extreme change in behavior immediately after she began objecting to his conduct and rejecting his advances was directly related to her rejections. *Exhibit B - SK Incident Report 19-5-IA Narrative of Capt. Ewing-Chow, p. 3.*

14. Aimee Reiner and Aimee Campbell both perceived the Plaintiff to be truthful. *See Exhibit D - Town of SK Deposition, p. 90:12-14.*

15. The Defendants claim that the Plaintiff's allegations were not corroborated throughout the investigation. *Exhibit B - SK Incident Report 19-5-IA Narrative of Capt. Ewing-Chow, p. 13.*

16. Lt. Orton submitted his resignation voluntarily and the town accepted it effective Dec. 31. *Exhibit D - Deposition of Town of SK, p. 90:1-20.*

17. Lt. Orton's resignation was not a formal disciplinary action. *Exhibit D - Deposition of Town of SK, p. 91:9-12.*

18. Lt. Orton was allowed to retire with his full rank and all of his benefits including his pension. *Exhibit D - Deposition of Town of SK, p. 90:12-14.*

19. After the Plaintiff's report, the Defendants began to retaliate against the Plaintiff, treating her differently than the other SKPD employees. *Exhibit A - Plaintiff's Amended Complaint, ¶ 26.*

20. This harassing and discriminatory behavior continued relentlessly until the Plaintiff no longer felt safe or comfortable reporting to work and was forced to resign from her position at the SKPD. *Exhibit A - Plaintiff's Amended Complaint, ¶ 28.*

21. When a dispatcher position became available on the second shift, the Plaintiff requested to switch from the overnight shift but her request was denied. *See Exhibit E - Plaintiff's Answers to Int. #22.*

22. The denial directly contradicted the terms of the Plaintiff's employment contract, which explicitly afforded her the opportunity to switch from third shift to second shift. *Exhibit E - Plaintiff's Answers to Int. #22.*

23. On July 22, 2021, the Plaintiff put in for second shift off on July 24, 2021, and her request was denied because no one had signed up to take her spot. *Exhibit E - Plaintiff's Answers to Int. #21.*

24. The SKPD policy permitted dispatchers to take a shift off so long as there was one dispatcher present and there was no previous standing order stating otherwise. *Exhibit E - Plaintiff's Answers to Int. #21.*

25. There was no standing order in place at the relevant time. *Exhibit E - Plaintiff's Answers to Int. #21.*

26. When the Plaintiff found someone willing to take her shift, she was then told by Dispatcher Signorelli that she was prohibited from speaking directly with Capt. Healy, who was in charge of non-sworn personnel, and that she needed to follow the chain of command. *Exhibit E - Plaintiff's Answers to Int. #21.*

27. This rule was also in direct contravention of the then existing SKPD policy, which provided that dispatch was not in the chain of command, only the sworn members were. *Exhibit E - Plaintiff's Answers to Int. #21.*

28. Dispatcher Signorelli shared a job title with the Plaintiff and was permitted to speak directly with Capt. Healy. *Exhibit E - Plaintiff's Answers to Int. #21.*

29. The Defendants made up new and arbitrary rules on the spot to prevent the Plaintiff from taking July 24, 2021 off, and again when the Plaintiff requested days off on July 28, 2021, July 29, 2021, and July 30, 2021. *Exhibit E - Plaintiff's Answers to Int. #21.*

30. The SKPD rules and regulations prohibit publicly releasing personal details of complainants in ongoing investigations involving sex related offenses. *See Exhibit F - Town of SKPD Operational Policy 610.01.*

31. Plaintiff had a right to have the details of her allegations kept confidential to the best of the Town's ability. *Exhibit D - Town of SK Depo, p. 124:1-16.*

32. Defendants did not redact the Plaintiff's personal information from the police reports and released the Plaintiff's name and the details of her sexual harassment allegations against Lt. Orton to the public. *Exhibit E - Plaintiff's Answers to Int. #20.*

33. Plaintiff was laughed at and ridiculed by colleagues who had become privy to these publicized details. *Exhibit E - Plaintiff's Answers to Int., #11.*

3556638.v2

34. The Plaintiff reported to her supervisors ongoing harassment by a citizen who would constantly use the 911 system to call the Plaintiff personally. *Exhibit E - Plaintiff's Answers to Int., #19; Exhibit D - Deposition Town of SK, p. 121:8-12.*

35. The Town of South Kingstown Harassment Policy requires the Director of Administrative Services to "thoroughly investigate reported allegations of harassment as promptly as practicable" and requires that the Town "maintain the highest degree of confidentiality possible with respect to such reports." *Exhibit G - Town of SK Harassment Policy*

36. The Town requested the 911 call log from Capt. Healy to see the number of calls and recordings but made no further investigation into the matter and the Town never made any formal written determination in connection with the complaints. *Exhibit D - Town of SK Deposition, p. 121:8-12;16-24.*

37. Members of the SKPD, including its command staff, falsely accused the Plaintiff of drunk driving after an incident that occurred on the night of her birthday. *Exhibit E - Plaintiff's Answers to Int. #18.*

38. The personnel department's investigation into the Plaintiff's claims did not reveal any reason to believe that the Plaintiff's claims were untrue, but nevertheless concluded without a substantiation of the Plaintiff's claims because "no one was able to state that they witnessed what she was claiming." *Exhibit D - Deposition of Town of South Kingstown, p. 83:21-24.*

39. Both the lewd hand gesture and taking of an unwanted and unsolicited photograph constituted harassment under the Town's harassment policy. *See Exhibit D - Deposition of Town of South Kingstown, p. 87:3-10.*

3556638.v2

40. The Town ultimately concluded that Lt. Orton was in violation of the Town's policy. *Exhibit D - Deposition of Town of South Kingstown, p. 87:22-24.*

41. Defendant Zarnetske as the Town Manager, along with any of his successors, is not only responsible for everything that happens in the Town of South Kingstown, but he also has the authority to hire, fire, discipline and oversee day-to-day operations of municipal employees, including the SKPD. *Exhibit D - Deposition of Town of South Kingstown, pp. 11:24-12:1-4.*

42. The Town Manager is "the tip of the pyramid when it comes to the responsibilities of personnel and activities that go on within the town" and is responsible for implementing the policies for the Town of South Kingstown. *Exhibit D - Deposition of Town of South Kingstown, pp. 11:24-12:1-4; p. 27:18-20.*

43. The Director of Administrative Services serves as second in command to the Town Manager, similar to a personnel director, and all human resource responsibilities fall under the scope of the position. *Exhibit D - Deposition of the Town of South Kingstown, pp. 22:9-12.*

> Respectfully submitted,
> The Plaintiff,
> By and through her undersigned counsel,
>
> */s/ John A. Donovan III*
> John A. Donovan III, # 5707
> Sloane and Walsh, LLP
> 652 George Washington Highway, Suite 302
> Lincoln, RI 02865
> (401) 495-6796
> jdonovan@sloanewalsh.com

7

3556638.v2

CERTIFICATE OF SERVICE

    I, John A. Donovan III, hereby certify that the within document was filed through the Odyssey File & Serve and will be sent electronically to all registered participants as identified on the ECF filing system on November 15, 2024.

                                                       */s/ John A. Donovan III*

3556638.v2